580 So.2d 292 (1991)
Johnny LEMON, Appellant,
v.
STATE of Florida, Appellee.
No. 90-02190.
District Court of Appeal of Florida, Second District.
May 22, 1991.
*293 James Marion Moorman, Public Defender, Bartow and Brad Permar, Asst. Public Defender, Clearwater, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee and Katherine V. Blanco, Asst. Atty. Gen., Tampa, for appellee.
THREADGILL, Judge.
The appellant, Johnny Lemon, appeals the denial of his motion to suppress a firearm seized from his person after the car he was riding in was stopped for a traffic infraction. We reverse on the ground that police lacked reasonable belief to frisk the appellant.
Officer Cooke of the St. Petersburg Police Department was patrolling a high crime area at about 9:00 at night when he observed a 1978 Ford Thunderbird drive slowly down the street and stop in front of an apartment complex known for drug activity. The appellant got out of the car and went inside. He returned a few minutes later. Officer Cooke followed the car and stopped it after noticing the red lens of the taillight was broken and a bright white light was showing through.
Back up police were called and were present at the stop. The car was occupied by three people: the appellant, a woman, and the driver. To protect himself, Officer Fridlund started patting the appellant down. He had patted the appellant's waist, hands, pants, and pockets, and was starting to pat the appellant's jacket when the appellant moved backwards and started taking the jacket off. Officer Bratton reached out and grabbed the jacket. Feeling it was heavy, he patted it down for a weapon. It contained a large object the size of a handgun. Bratton then retrieved a .38 caliber firearm.
The appellant contends entering a known "drug hole" is not grounds for a stop. In King v. State, 521 So.2d 334 (Fla. 4th DCA 1988), the court found no reasonable suspicion for the stop of a vehicle because it was parked in a high crime area, between two known drug houses, with two white men inside, talking to a Mexican male and a black male outside, even where the officer knew the black male to be a drug dealer and even where the black male walked away quickly as the officer approached. We find the circumstances here analogous; thus, they amount to no more than a bare suspicion of illegal activity.
We disagree with the appellant's contention, however, that the stop for the traffic infraction was pretextual. In Kehoe v. State, 521 So.2d 1094 (Fla. 1988), the supreme court held that the state must show that, under the facts and circumstances, a reasonable officer would have stopped the vehicle absent an additional invalid purpose. Id. at 1097. Section 316.221, Florida Statutes (1987), requires a motor vehicle to have two taillights mounted on the rear which when lighted shall emit a red light. In Wilhelm v. State, 515 So.2d 1343 *294 (Fla. 2d DCA 1987), we held that a stop for a broken taillight is pretextual where the vehicle had four taillights only one of which was inoperable. Although the record does not tell us whether the car in which the appellant was riding had more than two taillights, this case is distinguishable from Wilhelm on the ground that the taillight was broken and emitting a white light, not merely inoperable. The Fourth District has recently held by implication in Doctor v. State, 573 So.2d 157 (Fla. 4th DCA 1991) that a reasonable officer would stop a car that had a broken taillight. We find that under the circumstances in this case and given the hazard of a white light being emitted from the rear of a vehicle, a reasonable officer would stop a vehicle with a broken taillight.
Notwithstanding the legality of the stop, we reverse because the search of the appellant was not authorized under subsection 901.151(5), Florida Statutes (1987), of the Florida Stop and Frisk Law. Subsection 901.151(5) requires probable cause to believe that the person temporarily detained is armed with a dangerous weapon to justify a search. The supreme court has construed the term probable cause to mean reasonable belief in the context of the stop and frisk law. State v. Webb, 398 So.2d 820 (Fla. 1981).
Officer Fridlund began a pat-down for his own protection before the appellant started to remove his jacket. He testified that nothing had led him to believe the appellant was armed with a dangerous weapon. Officer Bratton testified that he was generally concerned about his safety in a high crime area and that he was suspicious because the appellant was wearing a loose fitting jacket on a warm night. He had not, however, observed anything on the appellant's person that looked like a weapon.
We have previously held that an officer's testimony that he had no reason to believe a defendant was armed invalidated a patdown following the defendant's detention. Thomas v. State, 533 So.2d 861 (Fla. 2d DCA 1988). The record reflects that the appellant did not begin to twist in his jacket and attempt to take it off until after Officer Fridlund had started to pat him down. Where a search is prompted by routine and not probable cause, the search is illegal. Redfin v. State, 453 So.2d 425 (Fla. 5th DCA 1984).
We disagree with the state's contention that the totality of the circumstances justifies the pat-down. As we stated above, Officer Cooke's initial observation of the appellant at the apartment complex did not amount to a founded suspicion of illegal activity. The initial observation together with the circumstances surrounding the stop; a broken taillight, three occupants in the vehicle, and the appellant's wearing a loose jacket on a warm evening; did not give rise to a reasonable belief that the appellant was armed with a dangerous weapon. These circumstances are less persuasive in light of the fact that there were at least three officers at the scene of the stop.
Reversed and remanded.
CAMPBELL, A.C.J., and PATTERSON, J., concur.