718 So.2d 1258 (1998)
Charles Edward PERRY, Appellant,
v.
STATE of Florida, Appellee.
No. 97-1953.
District Court of Appeal of Florida, First District.
October 5, 1998.
Nancy A. Daniels, Public Defender, and Archie F. Gardner, Jr., Assistant Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Attorney General, and Trina Kramer, Assistant Attorney General, Tallahassee, for appellee.
PER CURIAM.
Appellant challenges his convictions for one count of capital sexual battery, two counts of lewd and lascivious assault on a child under the age of 16, and one count of the lesser included offense of misdemeanor battery. Appellant claims the state made the Williams rule evidence a feature of the trial, and that improper comments by the prosecutor in his closing argument served to deny him a fair trial. Upon a thorough review of the record, we find no reversible or fundamental error and therefore affirm.
The victim, K.B., testified that when she was between the ages of five and 10, while alone with appellant, her uncle, he would stand her on a bed, remove her clothing and fondle her vagina until it hurt, progressing to vaginal intercourse. Additionally, the state presented testimony from three additional witnesses, portions of which pertained to uncharged acts. Their testimony as to the collateral uncharged acts included the following: 1) C.D.N., mother of K.B. and a sister of *1259 appellant, 13 years her senior, testified that when she was between the ages of four and six and while appellant babysat her, he would place her on a bed, remove her clothes and fondle her vagina until it hurt; 2) P.R., an aunt of K.B. and sister of appellant, 11 years her senior, testified that when she was between the ages of six and seven years and while appellant babysat her, he would place her on a bed remove her clothes and fondle her vagina until it hurt; and 3) C.A.P., a cousin of K.B. and daughter of appellant, testified that from the time she was 12 years of age, appellant repeatedly while in her bed or in the bathroom would place his hands under her clothing or bath towel and fondle her vagina. Like the victim K.B., all three collateral victims were alone with appellant when the incidents occurred and appellant told them not to tell anyone. Each of these witnesses testified as to their knowledge or lack thereof regarding both the charged crimes and the uncharged acts involving the others. Throughout this testimony, appellant renewed his previously denied motion in limine, or objected to the admissibility of the collateral evidence, and the trial court continued to rule the evidence was admissible. At the conclusion of their testimony, the trial court properly instructed the jury as to the limited purposes for which they could consider the testimony regarding the collateral or uncharged acts. The state presented testimony by one additional witness and then rested. After appellant presented his witnesses and testified, the defense rested. The state was permitted without objection to call one rebuttal witness. When instructing the jury, the trial court again gave a cautionary instruction on the limited purpose of the collateral testimony.
Appellant argues that the state made the Williams rule evidence a feature of the trial both by extensive Williams rule testimony and by repeated references to such in closing arguments. We do not agree. During the trial, it was not until the prosecutor mentioned the collateral testimony in his initial closing argument that appellant objected and moved for mistrial for the first time on grounds the Williams rule evidence had become a feature of the trial. Referring to the written order on the motion in limine which directed that the state not make such evidence a focal point of the trial, appellant argued that "he has done that now. He has violated that order." The prosecutor responded that was the first time he had mentioned it in his argument. The court denied the motion for mistrial, but expressed its concern and cautioned the prosecutor not to persist. In his motion for new trial, appellant made this same argument that the prosecutor had made the collateral evidence a feature of the trial in his closing argument, which the trial court denied.
The prosecutor's reference to the collateral evidence appears on one page of the transcript of the prosecutor's 22-page initial closing argument, where he simply pointed out the similarities of the charged and uncharged acts, and asked the rhetorical question why these women would come in and say such things, putting themselves at odds with their own mother, who had testified for the defense that she knew of no abuse by appellant. This comment was consistent with the proper use for collateral testimony to corroborate the victim's testimony and was a proper comment on the defense's contentions that these women were out to get appellant. See, e.g., Snowden v. State, 537 So.2d 1383 (Fla. 3d DCA 1989). Heeding the warning given by the trial court, the prosecutor never made reference again to the collateral evidence in his initial closing arguments and did not mention such in his final closing argument. Under these circumstances, we conclude the prosecutor did not make the Williams rule evidence a feature of the trial in his closing argument. Cf. Bush v. State, 690 So.2d 670 (Fla. 1st DCA 1997) (prosecutor's closing argument focused on all of the items stolen, rather than just the items listed in the theft charge, and gave a detailed list of the numerous items stolen from the collateral victims); Turtle v. State, 600 So.2d 1214 (Fla. 1st DCA 1992) (prosecutor's closing argument repeatedly referred to collateral incidents, and advised on at least four occasions that the collateral victim was "important in this case").
As above noted, although appellant's argument that the state made the *1260 Williams rule evidence a feature of the trial by extensive Williams rule testimony was first raised during the state's closing argument it may nevertheless be considered as fundamental error. See, e.g., Travers v. State, 578 So.2d 793, 797 (Fla. 1st DCA 1991) ("admission of excessive evidence of other crimes to the extent that it becomes a `feature of the trial,' especially in the absence of a limiting instruction at the time such evidence is received, has been recognized as fundamental error requiring reversal"). Here, the record reveals that the trial court twice gave a cautionary instruction, and the testimony by the state's witnesses as to the collateral acts was limited in duration. See, e.g., Coleman v. State, 484 So.2d 624 (Fla. 1st DCA 1986) (affirming denial of motion for mistrial in trial for charges of sexual abuse of a child, where testimony by three collateral victims of similar sexual abuse was limited in duration and cautionary instruction had been given). We agree with the observation of the court in Snowden, supra, that the mere volume of collateral evidence alone will not necessarily make it a feature of a trial. A review of the entire record shows that the testimony presented by the state's witnesses pertaining to the collateral acts was not excessive.[1]Cf. Long v. State, 610 So.2d 1276 (Fla.1992) (when the state rested, the jury had heard three days of testimony, only four hours of which related to the charged murder); Bush, supra (detective testified for the state, not only to the seized items listed in the theft charge, but went on to name three collateral victims and detail the numerous items stolen from each, and the state introduced photographs of the collateral victims' items, all over objections by defense counsel); Turtle, supra (more than half of the state's testimony pertained to the collateral crimes).
Appellant's remaining argument asserts as error comments made by the prosecutor in his closing arguments. Comments not properly preserved by contemporaneous objection and accompanying motion for mistrial are procedurally barred unless they constitute fundamental error. See, e.g., Chandler v. State, 702 So.2d 186 (Fla.1997). We conclude that none of the comments pointed to by appellant rise to the level required for reversible error, much less fundamental error. As for the adequately preserved comments alleged to be improper, the supreme court has held that in order for such comments to merit a new trial,
the comments must either deprive the defendant of a fair and impartial trial, materially contribute to the convictions, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.
Voorhees v. State, 699 So.2d 602, 614 (Fla. 1997). None of the comments challenged meets these requirements. It is well-established that prosecutorial comments, such as using the word "lie," when commenting on appellant's testimony, or characterizing the words of appellant as not those of an "innocent man" when commenting on appellant's verbal statement to an investigating police officer as set forth in testimony by that officer and other eyewitnesses, and not denied by appellant on the stand, are not improper. See, e.g., Davis v. State, 698 So.2d 1182, 1190 (Fla.1997); Craig v. State, 510 So.2d 857, 865 (Fla.1987) ("When counsel refers to a witness or a defendant as being a `liar,' and it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence."), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988).
AFFIRMED.
MINER and WEBSTER, JJ., and SMITH, LARRY G., Senior Judge, concur.
NOTES
[1] It actually appears that less than 20% of the testimony involved the collateral acts.