834 So.2d 314 (2003)
Quentin Eugene HATCHER, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-345.
District Court of Appeal of Florida, Fifth District.
January 3, 2003.
*315 James B. Gibson, Public Defender, and Lyle Hitchens, Assistant Public Defender, Daytona Beach, for Appellant.
Richard E. Doran, Attorney General, Tallahassee, and Angela D. McCravy, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
Quentin Eugene Hatcher appeals his convictions and sentence rendered after he entered pleas of nolo contendre to possession of a firearm by a convicted felon, carrying a concealed weapon, and possession of cocaine. Hatcher contends that the trial court erred in denying his motion to suppress because the police did not have the requisite suspicion to conduct a search of his person. We affirm.

The Facts
Upon observing the vehicle in which Hatcher was a passenger make an illegal turn, the officer put on his blue lights to pull the vehicle over. As he followed the vehicle into a parking lot, the officer noticed that Hatcher was not wearing a seat belt. The officer also noticed, as he approached the stopped vehicle on the passenger side, that Hatcher kept reaching across his body with his right hand. After Hatcher was unable to comply with the officer's request to produce identification, and because Hatcher continued to reach across his body with his right hand, the officer became concerned for his own safety and requested that Hatcher exit the vehicle.
When Hatcher, who was wearing a bulky jacket on a July morning, stepped out of the vehicle, the officer conducted a *316 pat-down search for weapons and found what the officer immediately recognized to be a cigar tube and the sound of crack cocaine rattling around in it. The officer opened the tube and discovered a substance he identified as crack cocaine, whereupon he placed Hatcher under arrest and seated him in the back of the patrol car. The officer obtained Hatcher's name and began a warrants check. After another officer noticed Hatcher moving about in the patrol car, Hatcher was removed from the car and a further search uncovered a pistol in the pocket of Hatcher's jacket. The warrants check revealed that Hatcher had three or four outstanding warrants for his arrest. The record contains a copy of the citation the officer issued to Hatcher for the seat belt violation dated the date of the incident.
Hatcher filed a motion to suppress the drugs and weapon, claiming that the traffic stop was illegal, the crack cocaine was illegally seized without a warrant, and the firearm was the fruit of the poisonous tree. After the suppression hearing, the trial court denied the motion to suppress, finding that the items were seized after a valid stop of the car and search of Hatcher. Hatcher entered his pleas, reserved his right to appeal, and was sentenced to three years in prison.
We will address the issues relating to the stop and search of Hatcher and whether the inevitable discovery doctrine applies to the instant case to allow admission of the drugs and weapon.

The Stop And Frisk[1]
The commission of a traffic infraction gives the police the right to stop a vehicle and issue the offending driver a citation. See State v. Kindle, 782 So.2d 971 (Fla. 5th DCA 2001); E.H. v. State, 593 So.2d 243, 244 (Fla. 5th DCA 1991) ("A non-criminal traffic violation justified the temporary detention solely for the purpose of issuing a citation.") (citing Cresswell v. State, 564 So.2d 480 (Fla.1990)); see also Welch v. State, 741 So.2d 1268 (Fla. 5th DCA 1999). The vehicle in which Hatcher was riding was stopped for violations of sections 316.151(1) and 316.614(5), Florida Statutes (2000). Hence, the stop was valid. Moreover, Hatcher concedes that the officer was justified in asking him to exit the vehicle for officer safety.[2] The parties do, however, strenuously contest whether the officer properly searched Hatcher for weapons after he was stopped and removed from the car.
The courts have consistently held that "a routine stop for a traffic citation does not, in and of itself, give rise to a *317 valid reason or authorization for a frisk." Richardson v. State, 599 So.2d 703, 705 (Fla. 1st DCA 1992) (citing Johnson v. State, 537 So.2d 117 (Fla. 1st DCA 1988)); C.Q. v. State, 801 So.2d 304 (Fla. 5th DCA 2001). In order to confer upon the officer the authority to frisk the occupants of the vehicle, the officer must have a reasonable suspicion that the person is armed with a dangerous weapon. Smith v. State, 735 So.2d 570, 572 (Fla. 2d DCA 1999) (citing Richardson; Thompson v. State, 551 So.2d 1248 (Fla. 1st DCA 1989)); see also C.Q. "Examples of types of conduct which may constitute articulable facts to support a reasonable suspicion that a suspect is armed and dangerous include: (1) the suspect's failure to cooperate, (2) the suspect's furtive movements, and (3) a bulge in the suspect's clothing." Richardson, 599 So.2d at 705 (citing Johnson, 537 So.2d at 119); see also Smith.
Hatcher contends, based on this court's decision in E.H., that his actions in reaching across his body did not give the officer reasonable suspicion.[3] Hatcher further asserts, based on Lemon v. State, 580 So.2d 292 (Fla. 2d DCA 1991), that wearing a heavy coat on a warm summer day does not give an officer reasonable suspicion to search a person. The State responds that while each factor standing alone may not give reasonable suspicion, the combination of these factors does. We have found no case deciding whether the combination of these factors is sufficient to give an officer reasonable suspicion to believe that an individual possesses a dangerous weapon. However, it is not necessary for us to decide this specific issue here because even if Hatcher is correct, affirmance is required pursuant to the inevitable discovery doctrine.

The Inevitable Discovery Doctrine
The trial judge in the instant case proclaimed that "I have never seen a case where inevitable discovery might so clearly appear as in this one." The inevitable discovery doctrine was adopted by the United States Supreme Court in Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), as an exception to the fruit of the poisonous tree doctrine. Maulden v. State, 617 So.2d 298 (Fla. 1993).[4] The inevitable discovery doctrine allows evidence obtained as the result of unconstitutional police procedure to be admitted if the evidence would ultimately *318 have been discovered by legal means.[5] The Court reasoned that "[e]xclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." Nix, 467 U.S. at 446, 104 S.Ct. 2501. The Florida Supreme Court and this court have embraced the doctrine. Jeffries v. State, 797 So.2d 573 (Fla.2001); Maulden; Craig v. State, 510 So.2d 857 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988); State v. Walton, 565 So.2d 381 (Fla. 5th DCA 1990); State v. McLaughlin, 454 So.2d 617 (Fla. 5th DCA 1984).
The inevitable discovery doctrine requires the state to establish by a preponderance of the evidence that the police ultimately would have discovered the evidence independently of the improper police conduct by "means of normal investigative measures that inevitably would have been set in motion as a matter of routine police procedure." Craig, 510 So.2d at 863 (citations omitted). "In order to apply this doctrine, there does not have to be an absolute certainty of discovery, but rather, just a reasonable probability." State v. Ruiz, 502 So.2d 87, 87 (Fla. 4th DCA 1987) (citing United States v. Brookins, 614 F.2d 1037 (5th Cir.1980)); see also Jeffries, 797 So.2d at 578 (quoting Ruiz).
The State argues that Hatcher was observed riding in the passenger seat without a seat belt as the vehicle pulled into the parking lot. Because it is unlawful, according to section 316.614(5), Florida Statutes (2000), for any person eighteen years old or over to be a passenger in the front seat without utilizing the seat belt and because the driver or passenger may be issued a citation for violation of the seat belt requirement when an officer has detained the driver for a suspected violation of any other state traffic law, the State contends that the officer had the authority to issue Hatcher a citation. After discovering Hatcher's name, a warrants check would have revealed the existence of outstanding warrants for Hatcher's arrest. At that point, the officer would have conducted a search incident to arrest and would have discovered the pistol and the cigar tube containing the crack cocaine. Therefore, the State concludes that the inevitable discovery doctrine would have allowed the admission of the drugs and the weapon.
We agree that, after the officer issued the citation to Hatcher for the seat belt violation, more than a reasonable probability existed that the drugs and weapon inevitably would have been discovered independently of the pat-down search of Hatcher. In accordance with normal police investigative procedures, after issuance of the citation, the officer would have conducted a warrants check that would have uncovered the outstanding warrants for Hatcher's arrest. Upon discovering the outstanding warrants, routine police procedures would have required a search of Hatcher and the discovery of the drugs and the weapon. Where, as in the instant case, the inevitable discovery doctrine applies and "[t]he unchallenged facts establish sufficient `inevitability,'" this court may simply affirm the order denying the motion to suppress without further proceedings in the trial court. See Walton, 565 So.2d at 384.

Conclusion
We conclude that commission of the traffic offense gave the officer the legal *319 right to stop the vehicle in which Hatcher was riding to issue a citation to the driver. Hatcher's failure to wear his seat belt provided the officer with the authority to issue Hatcher a citation. Moreover, removal of Hatcher from the vehicle was appropriate. We further conclude that regardless of whether the initial frisk of Hatcher was proper, the inevitable discovery doctrine clearly applies to the instant case because there was a reasonable probability that, independently of the search, the drugs and the weapon would have been discovered after the officer issued Hatcher the citation for the seat belt violation. Hence, the trial court correctly denied Hatcher's motion to suppress.
AFFIRMED.
GRIFFIN, J., and HARRIS, C., Senior Judge, concur.
NOTES
[1] The instant case does not involve a Terry stop, see Terry v.Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), because the vehicle in which Hatcher was a passenger was detained based on traffic infractions and there is no evidence that the police had a reasonable suspicion that the occupants were involved in criminal activity. See C.Q. v. State, 801 So.2d 304 (Fla. 5th DCA 2001); E.H. v. State, 593 So.2d 243 (Fla. 5th DCA 1991).
[2] See Smith v. State, 735 So.2d 570, 571-72 (Fla. 2d DCA 1999), in which the court held:

Because the windshield was cracked, the vehicle's stop was justified. See Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). A police officer, as here, is permitted to then order the vehicle's passengers to exit pending the stop's completion. See Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). Nevertheless, the authority to remove Mr. Smith from the car did not automatically confer upon the officer the authority to frisk him. Rather, an officer must be able to articulate a reasonable suspicion that a person is armed with a dangerous weapon before a frisk is presumed lawful. See Richardson v. State, 599 So.2d 703, 705 (Fla. 1st DCA 1992) (citing Thompson v. State, 551 So.2d 1248 (Fla. 1st DCA 1989)).
[3] In E.H., a vehicle was stopped because the driver committed various traffic infractions. After being ordered out of the vehicle, the officer conducted a pat-down search of E.H., one of the passengers, because E.H. continued to reach into his pocket. The officer discovered cocaine in one of E.H.'s pockets and arrested him for possession of cocaine. This court reversed the trial court's denial of E.H.'s motion to suppress because

[t]here was no indication or even suspicion that the youths had committed, were committing, or were about to commit a violation of the criminal laws of the state.... Although the officer expressed concern that E.H. kept reaching into his pocket, the state never established that the officer had probable cause to believe that E.H. was armed with a dangerous weapon. There was no testimony, for example, that the officer observed a bulge in E.H.'s pocket or made any other observation which caused him to believe that a dangerous weapon might be present.
E.H., 593 So.2d at 244.
[4] The fruit of the poisonous tree doctrine is a court-made exclusionary rule "which forbids the use of evidence in court if it is the product or fruit of a search or seizure or interrogation carried out in violation of constitutional rights." Craig v. State, 510 So.2d 857, 862 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988) (citing Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. Cruz, 581 F.2d 535 (5th Cir.1978) (en banc)).
[5] "The inevitable discovery doctrine is properly applied regardless of whether the ground of suppression of the statement is violation of the fourth amendment, fifth amendment, or sixth amendment." Craig, 510 So.2d at 863 (citing Nix).