531 So.2d 133 (1988)
STATE of Florida, Petitioner,
v.
Sylvester O'Neal LEE, Respondent.
No. 70882.
Supreme Court of Florida.
September 1, 1988.
*134 Robert A. Butterworth, Atty. Gen. and Gary L. Printy, Asst. Atty. Gen., Tallahassee, for petitioner.
Michael E. Allen, Public Defender and Glenna Joyce Reeves, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for respondent.
EHRLICH, Chief Justice.
We have for review Lee v. State, 508 So.2d 1300 (Fla. 1st DCA 1987), wherein the district court certified the following question of great public importance:
DOES THE ERRONEOUS ADMISSION OF EVIDENCE OF COLLATERAL CRIMES REQUIRE REVERSAL OF APPELLANT'S CONVICTION WHERE THE ERROR HAS NOT RESULTED IN A MISCARRIAGE OF JUSTICE BUT THE STATE HAS FAILED TO DEMONSTRATE BEYOND A REASONABLE DOUBT THAT THERE IS NO REASONABLE POSSIBILITY THAT THE ERROR AFFECTED THE JURY VERDICT?
Id. at 1304. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the affirmative, and hold that reversal is mandated under State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), when the state fails to demonstrate beyond a reasonable doubt that there is no reasonable possibility that the erroneous admission of collateral crime evidence affected the jury verdict.
Lee was charged by an amended information with separate counts of armed kidnapping, armed sexual battery, armed robbery, possession of a firearm by a convicted felon, and possession of a firearm in the commission of a felony. The testimony presented at trial established that at approximately 3:00 a.m. on December 13, 1983, the victim and two male friends were seated in an automobile in a parking lot in Panama City when Lee approached them with a handgun. A short struggle ensued, after which Lee drove the car away with the victim in it. After driving for thirty to forty minutes, Lee stopped the car in a wooded area, forced the victim to perform oral sex upon him, and then compelled the *135 victim to have sexual intercourse with him. Lee then left the victim in the wooded area and drove away in the car. The victim was eventually able to contact law enforcement authorities. Tests performed upon the victim established the presence of semen of the blood group which was consistent with Lee's. Latent fingerprints found on the car and on a checkbook inside the car were identified as Lee's.
At the trial, the victim and the two male friends who were present during the initial confrontation, one of whom had known Lee previously, identified Lee as the person who committed the offenses. In addition, the state was permitted to present, over defense objections, testimony by three bank tellers who identified Lee as a participant in a Tallahassee bank robbery at 2:00 p.m. on the same day as the offenses in the instant case. Lee was convicted on all counts by a jury and sentenced by the trial court. The First District Court of Appeal reversed Lee's conviction and remanded for a new trial. The district court held that the trial court erred in admitting the testimony of the bank tellers over objection and that the state failed to demonstrate that the error was harmless. The state now seeks review of the decision of the district court.
We reject the state's argument that the district court erred in determining that the evidence of Lee's participation in an armed bank robbery in Tallahassee just hours after committing the rape and robbery at issue in the present case was not admissible under any standard of admissibility of collateral crime evidence. Evidence of collateral crimes or acts committed by the defendant is inadmissible if its sole relevancy is to establish bad character or propensity of the accused. Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). Evidence of other crimes or acts is admissible, however, "if it casts light upon the character of the act under investigation by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of the prior offenses would have a relevant or a material bearing on some essential aspect of the offense being tried." Id. at 662. See § 90.404(2)(a), Fla. Stat. (1983). The test for admissibility of evidence of collateral crimes is relevancy. Heiney v. State, 447 So.2d 210, 213 (Fla.), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984).
The state contends the evidence was relevant to establish the entire context out of which the criminal episode occurred, arguing first that Lee's motive for stealing the car in Panama City was to avoid using his own car as a "get away" car during the bank robbery in Tallahassee. The state also argues that the testimony that Lee robbed a bank while armed with a handgun corroborated evidence that Lee used a handgun during the offenses at issue. As this Court has previously recognized, "[a]mong the other purposes for which a collateral crime may be admitted under Williams is establishment of the entire context out of which the criminal conduct arose." Smith v. State, 365 So.2d 704, 707 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979).
The stolen car was located in Tallahassee approximately one mile from the bank that was robbed. There was, however, no evidence presented at trial that the car was used during the bank robbery or that Lee was the person who drove the car to Tallahassee. It was not established that the gun used during the bank robbery was the gun used during the offenses at issue. Furthemore, the mere fact that a gun was used during the bank robbery does not establish that Lee used a gun during the charged offenses under review. Because no connection was established between the bank robbery and the instant offenses, the evidence of the bank robbery was not relevant to establish the entire context out of which the criminal conduct arose. The testimony relating to the bank robbery did not have a relevant or a material bearing on any essential aspect of the offenses being tried and did not tend to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or *136 accident in regard to these charged offenses. Compare Heiney (Collateral crime evidence was relevant and admissible to establish the "entire context" of the crimes charged where evidence established that Heiney's desire to avoid apprehension for the shooting in Texas motivated him to commit robbery and murder in Florida so that he could obtain money and a car in order to continue his flight from Texas.). The district court correctly determined that the collateral crime evidence in the present case was not admissible under this theory.
The erroneous admission of collateral crime evidence is subject to harmless error analysis as set forth in DiGuilio. Keen v. State, 504 So.2d 396 (Fla. 1987). As this Court noted in DiGuilio:
The harmless error test, as set forth in Chapman and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. See Chapman [v. California], 386 U.S. 18 at 24, 87 S.Ct. [824] at 828 [17 L.Ed.2d 705]. Application of the test requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.
491 So.2d at 1135. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful. Id. at 1139.
The state offered no argument in support of harmless error in its brief to the district court and during oral argument before the district court, counsel for the state erroneously insisted it was an obligation of the court to apply the harmless error test without argument or guidance from the state. The district court stated that after an examination of the record, it was "unable to conclude that there is no reasonable possibility that the erroneous admission of the bank tellers' testimony did not, under the DiGuilio test, affect the verdict." 508 So.2d at 1303. The district court was therefore correct in reversing the conviction and remanding for a new trial.
The district court certified the question of great public importance because of the belief that the permissible evidence of Lee's guilt was overwhelming, if not conclusive. The district court stated it is confident that Lee would again be found guilty on retrial and accordingly believes this Court should revisit and modify the DiGuilio test in respect to its application to the circumstances shown by this case. In its brief to this Court, the state concedes it "is at a loss to show that there is no reasonable possibility that the error affected the jury verdict." Instead, the state argues the DiGuilio test is unworkable and the error, if any, was harmless because the evidence against Lee was overwhelming.
We agree that the properly admitted evidence was sufficient to support a jury verdict of guilty. However, we decline to modify the DiGuilio test to require only a showing that the permissible evidence would support the conviction in order to find the erroneous admission of improper collateral crime evidence harmless.[1] As *137 this Court has previously recognized, the focus of harmless error analysis must be the effect of the error on the trier of fact. See Keen, 504 So.2d at 401. We again emphasize that "harmless error analysis must not become a device whereby the appellate court substitutes itself for the jury, examines the permissible evidence, excludes the impermissible evidence, and determines that the evidence of guilt is sufficient or even overwhelming based on the permissible evidence." DiGuilio, 491 So.2d at 1136. We reiterate our agreement with former Chief Justice Traynor of the California Supreme Court:
Overwhelming evidence of guilt does not negate the fact that an error that constituted a substantial part of the prosecution's case may have played a substantial part in the jury's deliberation and thus contributed to the actual verdict reached, for the jury may have reached its verdict because of the error without considering other reasons untainted by error that would have supported the same result.
People v. Ross, 67 Cal.2d 64, 85, 429 P.2d 606, 621, 60 Cal. Rptr. 254, 269 (1967) (Traynor, C.J., dissenting), rev'd, 391 U.S. 470, 88 S.Ct. 1850, 20 L.Ed.2d 750 (1968).
We also reject the argument that the DiGuilio test is "unworkable." It is apparent that the district court below was able to adequately apply the test as evidenced by its conclusion that it could not say that the error did not affect the verdict.
In the present case, the improper collateral crime evidence was given undue emphasis by the state and was made a focal point of the trial.[2] We agree with the *138 district court below that the opening and closing arguments of the state attorney lead to the inescapable conclusion that the prosecutor was asking the jury to find Lee guilty, at least in part, because he was an evil man intent on committing crime. The state has failed to meet the burden under DiGuilio. Because of the emphasis placed on the improper collateral crime evidence, we are unable to say beyond a reasonable doubt that the testimony presented regarding Lee's participation in a bank robbery several hours after committing the offenses under review had no impact on the verdict. The district court correctly reversed the conviction and remanded for a new trial pursuant to DiGuilio. Accordingly, we approve the result reached by the district court below.
It is so ordered.
OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The district court's certified question encompasses that court's recognition of sections 59.041 and 924.33, Florida Statutes (1983). Section 59.041 provides:

No judgment shall be set aside or reversed, or new trial granted by any court of the state in any cause, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice. This section shall be liberally construed.
Section 924.33 provides:
No judgment shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant.
We have previously recognized that the authority of the legislature to enact harmless error statutes is unquestioned. State v. DiGuilio, 491 So.2d 1129, 1134 (Fla. 1986). The Court retains the authority, however, to determine when an error is harmless and the analysis to be used in making the determination.
[2] This is obvious from a review of the prosecutor's opening and closing arguments.

And if all this wasn't enough, what the defendant did is take her car and drove to Tallahassee that same morning. And he got to Tallahassee and somewhere he got paired up with his partner, a man named Charles Johnson. And shortly before 2:00 o'clock, Tallahassee Time, they go into the Security First Federal Bank on West Tharpe Street in Tallahassee and he's got a gun and he's wearing a disguise. He's got a fake mustache and a hat and dark glasses and a tie and a sport coat. Goes in the bank in Tallahassee with a gun and with his partner, who's armed, and they rob the bank in Tallahassee. And they leave in Wayne Johnson's car which Fredricka Mack was driving. In the stolen car they leave there and they ditch it in the woods nearby the bank and they make good their escape. They get away from the bank robbery.
But again, he didn't get away forever because they had bank surveillance cameras, they had cameras in the bank that photographed him wearing this disguise. There were three tellers in the bank who identified him despite the disguise as being the man who was there in the bank robbing them with the gun.
.....
The next thing that happens in this case is the car is found. The car is found in Tallahassee. That same day. Early in the afternoon. And that car is found in the woods. About a mile away from the Security First Federal Bank. What is significant about that? What's significant about that is that that bank was robbed. Well, what's significant about that? It was robbed by two men one of whom had a gun and you can see it, that black gun. That black snubnosed gun with a round thing that looks like the gun that the detectives carry.
.....
Now, the defense apparently objects to the fact that I called three tellers, three bank tellers. You saw the ladies who testified. They don't like the fact that I called them in court to testify. I wouldn't like it either if I was a defendant. Because every one of those women, and two of them were closer than I am to the closest one of you right now, every one of those women definitely, positively, without any doubt or any hesitation or any equivocation, each one identified this defendant, this man, as the one who was robbing their bank at 2:00 o'clock in the afternoon that same day, carrying this pistol in his hand.
.....
What this case is about is about a man who kidnapped a woman, a man who had been previously convicted of first degree murder, robbery, and escape, kidnapping a woman with a firearm, taking her out in the woods, raping her, putting her out, taking her car off, coming back after a few minutes, not finding her, getting back in the car, driving to Tallahassee, getting up with his partner and robbing the Security First Bank at gunpoint wearing a disguise, a fake mustache, and dark glasses and that hat.