600 So.2d 1214 (1992)
James Edgar TURTLE, Appellant,
v.
STATE of Florida, Appellee.
No. 90-2978.
District Court of Appeal of Florida, First District.
June 9, 1992.
Rehearing Denied July 10, 1992.
*1215 Nancy A. Daniels, Public Defender, and Paula S. Saunders, Asst. Public Defender and Steven Been, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Amelia L. Beisner, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
James Turtle appeals his convictions of two counts of sexual battery on M.J.F., a boy less than 12 years of age, and one count of lewd and lascivious assault on the same child. The charged offenses arose out of an incident alleged to have occurred on March 4, 1990. He contends that the trial court committed reversible error in respect to three different evidentiary rulings: (1) permitting collateral crime evidence to become a feature of the trial so as to improperly inflame and prejudice the jury against him; (2) admitting certain hearsay statements by a child witness to bolster that witness's credibility; and (3) allowing the state's expert witness to give irrelevant and prejudicial testimony about the characteristics of a pedophile. Finding *1216 error on each point, we reverse and remand for a new trial.
Prior to trial, Turtle filed a motion in limine seeking to exclude any testimony or other evidence to be presented by Dr. John Hodges, a psychologist, or any other state expert witness concerning the psychological disorder known as pedophilia and other related psychological disorders involving sexual attraction of adults to children. Turtle also filed a written motion entitled "Defendant's Objection to Similar Fact Evidence" moving the court to exclude any evidence at trial concerning Turtle's alleged sexual abuse of another child, C.M.F. The circuit court denied both motions.
During trial, the court permitted the state, over appropriate objection by the defense, to introduce testimony by Dr. Hodges describing the characteristics of a pedophile. The court also permitted the state to present testimony from several witnesses, and to make argument to the jury concerning Turtle's alleged July 1989 sexual assault of another boy, C.M.F., who was about the same age as M.J.F. and was referred to at trial by the same first name as M.J.F., the child involved in these charges (we refer to them by the fictitious name "Mat" in this opinion). The jury found Turtle guilty as charged, and a judgment of conviction was entered on the verdict. The court sentenced Turtle to two consecutive terms of life in prison with 25-year mandatory minimum sentences on the sexual battery counts, and to a consecutive 5 1/2-year term of imprisonment on the lewd and lascivious assault count. The court denied Turtle's amended motion for a new trial.
Turtle first contends that the circuit court erred in admitting over his objection extensive testimony regarding criminal offenses Turtle allegedly committed against the other young boy, C.M.F., because that evidence was probative only of a bad character and propensity to commit the alleged offenses against M.J.F., was intended to portray him as a pedophile who befriended, then abused, young boys, and that the court wrongfully allowed this evidence to become a feature of the trial. The similarities shown between the two incidents, Turtle argues, are that he befriended both boys, gave both boys gifts, allegedly molested both boys, and then told them not to tell anyone about the incidents. He contends that these circumstances lack the unique characteristics of similarity necessary to set these incidents apart from behavioral activities common to virtually all child sexual abuse cases. He further argues that, even if evidence of this alleged collateral crime were admissible, the extent of the evidence of Turtle's alleged molestation of the other boy, C.M.F., presented by the state became a feature of the trial, as it included testimony of no less than five witnesses at trial, consumed more than half of the trial testimony presented by the state, and was repeatedly emphasized by the state during closing argument. Moreover, Turtle argues, the undue prejudice caused by this extensive evidence and the state's repeated reference thereto was exacerbated by the confusion flowing from the similarity of the names of the two boys ("Mat") and the frequency by which the prosecutor and witnesses (and the judge on at least one occasion) referred to each boy using the same name.
The state argues that the trial court did not abuse its discretion by admitting evidence that Turtle had committed acts upon C.M.F. similar to those charged in this case, because Turtle's actions against C.M.F. were so similar to his actions toward M.J.F. (the evidence tended to prove that both boys were about the same age at the time of the molestations, that Turtle befriended both boys, gave them money and gifts, molested them in private, and told them not to tell anybody that he had molested them) that they were relevant to show that Turtle had engaged in a "system or general pattern of criminality involving young boys whom he befriended." The state further contends that this collateral crime evidence was also relevant to rebut Turtle's attempt to show that it was another *1217 individual rather than himself who had molested the alleged victim, M.J.F.
We agree with Turtle that the trial court erred in permitting the state to present such extensive evidence about Turtle's sexual assault of the other child, C.M.F., and to argue so extensively about that episode during closing argument. Under the circumstances of this case, this collateral transaction evidence became such a feature of the trial that Turtle was unduly prejudiced and deprived of his right to a fair trial. It is unnecessary to describe in sordid detail the extensive testimony presented on this issue; suffice it to say that on this record, it was often difficult to determine which of the two boys was the subject of the charges being tried in this case. The evidence concerning the witness C.M.F. consumed more than half of the trial proceedings, and was presented not only through the testimony of C.M.F., but also through the testimony of: (1) C.M.F.'s mother, who testified prior to C.M.F. in detail about what C.M.F. told her took place during his visit with Turtle; (2) Dr. Hodges, who was recalled after C.M.F.'s testimony and testified as to his interviews with C.M.F. and the symptoms of child sexual abuse that C.M.F. exhibited; (3) Officer Enderson, who testified concerning an interview with C.M.F. and his mother about an alleged sexual assault upon C.M.F. and what C.M.F. told him happened; and (4) Officer Waldron, who participated in the police investigation of C.M.F.'s allegations against Turtle and testified as to his interview with Turtle concerning C.M.F.'s allegations. The prosecutor then repeatedly referred to the incidents involving C.M.F. during closing arguments. For example, on at least four occasions the prosecutor argued that C.M.F. was "important in this case." He further argued, "[w]ouldn't it make sense if you were falsely accused by a young boy, i.e., [C.M.F.], to stay away from children until those charges are resolved, sure it would, unless you do these types of things that Mr. Turtle is charged with?" The prosecutor also argued, over defense objection, that Turtle picked up children like C.M.F., who did not have a father figure, by giving them toys and games and taking them to places that they normally would not be able to go, and that this action was consistent with testimony from Dr. Hodges about "the type of people who do these crimes." The prosecutor compared M.J.F.'s and C.M.F.'s vulnerability and how each reacted to the molestations. At one point during trial, even the trial judge expressed concern that the similar fact evidence was becoming a feature of the trial. Furthermore, the prejudicial effect of this error was compounded by the fact that at various times during trial, some of the witnesses, including Dr. Hodges and Officer Kelley, as well as the prosecutor, and the judge on at least one occasion, referred to both boys by the same name ("Mat"), so that at times the jury could well have been confused as to which "Mat" the witnesses or parties were referring.
The admissibility of similar fact evidence is governed by section 90.404(2)(a), Florida Statutes, which states:
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
To meet the strict standard of relevance and admissibility prescribed by section 90.404(2), Florida Statutes (1989), the charged offense and the collateral offense "must be not only strikingly similar, but they must also share some unique characteristics or combination of characteristics which sets them apart from other offenses." Heuring v. State, 513 So.2d 122, 124 (Fla. 1987). The evidence must be clearly relevant to establish a material fact in issue such as identity, motive, opportunity, plan, knowledge, or absence of mistake or accident. Id. However, even when relevant, such evidence nevertheless may be inadmissible *1218 under section 90.403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." It is the obligation of the court to weigh the probative value of such evidence against undue prejudicial effect, and substantial undue prejudice under this latter section has been found when the evidence of collateral crimes has been allowed to become a "feature of the trial instead of an incident," in respect to both the quantum of evidence presented and the arguments of counsel. See, e.g., Travers v. State, 578 So.2d 793 (Fla. 1st DCA), rev. denied, 584 So.2d 1000 (Fla. 1991) (evidence of appellant's collateral offenses against the victim's older sister clearly became a feature of the trial, both with respect to the quantum of evidence presented and the arguments, including an opening statement of the prosecutor telling the jury that the evidence will show that the case deals with two young children, and constituted error; but this excessive use of the "other crime" evidence was held not to be fundamental error where excessive presentation of that evidence was attributable for the most part to trial tactics and efforts by defense counsel); Thomas v. State, 599 So.2d 158 (Fla. 1st DCA 1992) (where evidence of appellant's sexual battery of another child 12 years previously was a significant part of the state's case against appellant and was inadmissible as similar fact evidence, the error in admitting that evidence could not be considered harmless); State v. Lee, 531 So.2d 133, 137-38 (Fla. 1988) (defendant was entitled to a new trial, even though there was sufficient properly admitted evidence to support a jury verdict of guilty, where improper collateral crime evidence was given undue emphasis by the state, in opening and closing argument, and was made the focal point of the trial). Without undertaking to determine whether closely limited evidence of the collateral offense against C.M.F. would be admissible against Turtle in this case, we conclude on the record before us that the extent of the evidence and arguments concerning Turtle's offenses against C.M.F. was the result of the state's presentation and not attributable to trial tactics and efforts of the defense, was unduly prejudicial under section 90.403, and deprived Turtle of a fair trial, so that its admission amounted to an abuse of discretion by the trial court. E.g., State v. Lee, supra; Heuring v. State, supra; Thomas v. State, supra; Travers v. State, supra. Accordingly, we find it necessary to reverse and remand for a new trial.
Turtle next contends that the circuit court committed reversible error in allowing the state to introduce C.M.F.'s hearsay statements to his mother and to Officer Enderson for the purpose of bolstering C.M.F.'s credibility under the "first complaint theory" or "under any other theory that is allowable under law." The state correctly concedes that the trial court erred in admitting this hearsay under the first complaint theory. But the state contends that the error was harmless and that C.M.F.'s hearsay statements were admissible under other provisions of the evidence code, i.e., that C.M.F.'s statements to his mother were admissible under section 90.803(2), the excited utterance exception of the hearsay rule, while his hearsay statements to the officer were admissible under section 90.801(2)(b) to rebut a charge of recent fabrication of C.M.F.'s trial testimony. We conclude that the hearsay statements were not admissible under either theory and their admission was not harmless error.
For a hearsay statement to fall under the excited utterance exception:
(1) there must be an event startling enough to cause nervous excitement; (2) the statement must have been made before there was time to contrive or misrepresent; and (3) the statement must be made while the person is under the stress of excitement caused by the event.
See State v. Jano, 524 So.2d 660, 661 (Fla. 1988); § 90.803(2), Fla. Stat. (1989). Assuming that the molestation charged in this case was committed under circumstances *1219 sufficient to constitute a startling event, the evidence does not indicate that C.M.F. made the hearsay statements while still under the stress of any excitement caused by that event. At trial, C.M.F.'s mother testified that when C.M.F. returned home from the weekend visit at Turtle's apartment, he was abnormally quiet. C.M.F. did not tell his mother about the alleged molestation by Turtle until his mother repeatedly asked him if anything was wrong, and C.M.F. denied that anything was wrong. Approximately two hours after C.M.F. returned home and approximately one day after the alleged sexual assault, C.M.F. finally told his mother what Turtle did to him and appeared to be embarrassed while talking about it. The circuit court ruled, and we agree, that C.M.F.'s statements to his mother were not an excited utterance.
We likewise conclude that C.M.F.'s statements to the officer were not admissible to rebut the inference of recent fabrication under section 90.801(2)(b), Florida Statutes (1989). That section provides:
(2) A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is:
.....
(b) Consistent with his testimony and is offered to rebut an express or implied charge against him of improper influence, motive, or recent fabrication.
In a case applying this section, Jenkins v. State, 547 So.2d 1017 (Fla. 1st DCA 1989), after the victim had testified on direct examination that the defendant broke into her house wearing only his underwear and holding a hunting knife, entered her bedroom, lay down beside her, fondled her breast, and then left after she told him to do so, the defense attempted to impeach the victim's testimony, generally attacking her credibility by showing certain inconsistencies between her trial testimony and her deposition testimony regarding her failure to report the incident on the date on which it allegedly occurred and whether her son was present in the room during the incident. On redirect examination, the court allowed the victim's mother and a deputy sheriff to testify, over hearsay objection from the defense, as to specific statements the victim had made to them about the incident prior to the trial which were consistent with the victim's trial testimony. This court held that the trial court committed reversible error in allowing the state to introduce these prior statements made to the mother and the deputy sheriff because they were consistent with the victim's trial testimony and served only to impermissibly bolster her credibility, contrary to section 90.801(2)(b). The rationale for this court's decision was stated thusly:
There must be an initial attempt on cross-examination to demonstrate the improper influence, motive or recent fabrication and, once such an attempt has successfully occurred, then prior consistent statements are admissible on the redirect examination or through subsequent witnesses to show the consistency of the witness' trial testimony... .
... .
A reasonable interpretation of the victim's cross-examination does not indicate, either expressly or implicitly, a charge of recent fabrication, improper influence or motive to falsify. Her testimony did not indicate that she was changing her story at trial; nor did the impeachment attempts establish any fact which indicated that her trial testimony was improperly influenced or that she had a motive to falsify. A witness' credibility is always an issue at trial, and a general attack on that credibility does not satisfy the hearsay exception rule.
Id. at 1020-21. (Citations omitted).
Similarly, in this case there was no attempt on cross-examination to establish any improper influence, motive, or recent fabrication in respect to C.M.F.'s trial testimony. At best, only general inconsistencies between his testimony at trial and on pretrial deposition were shown on cross-examination. *1220 Consequently, there was no valid basis under this section of the evidence code to admit this hearsay testimony.
Finally, Turtle contends that the trial court committed reversible error in allowing Dr. Hodges, a psychologist, to testify about the characteristics of a pedophile and in denying his motion for mistrial predicated on the state's argument to the jury based on that testimony. Turtle argues that the only purpose for introducing the expert's testimony was to establish that Turtle was a pedophile who ingratiated himself with young boys in order to "sexually victimize" them. Since Dr. Hodges had never examined Turtle and could not say that he suffered from pedophilia, Turtle argues, his testimony was irrelevant and should have been excluded.
The state contends that the trial court did not abuse its discretion by permitting Dr. Hodges's testimony about the general characteristics of a pedophile, arguing that Dr. Hodges specifically stated that he had not examined Turtle, that he did not testify that Turtle possessed these characteristics, and that his testimony was introduced only for the purpose of educating the jury about the characteristics of pedophilia without invading the province of the jury, as the jury was left free to make logical inferences regarding the weight to be given the profile evidence and whether Turtle fit the profile. The state further argues, in light of Turtle's impeachment of the child victim, M.J.F., with inconsistent statements made during his pretrial deposition, and Turtle's attempt to show that another individual, Tony Bruner, sexually assaulted M.J.F., that Dr. Hodges's testimony was relevant both to rehabilitate M.J.F.'s credibility and to prove that Turtle, not Bruner, committed the charged crimes. Thus, the state argues, the evidence has relevant probative value that was not outweighed by the prejudicial effect it may have had.
We conclude that this issue is governed by our recent decision in a similar case involving two counts of sexual battery upon a child less than 12 years of age, Phillips v. State, 589 So.2d 1360 (Fla. 1st DCA 1991), questions certified (Fla. 1st DCA Dec. 26, 1991). The issue there presented was whether the trial court erred in allowing the state to introduce "pedophile profile" testimony as substantive evidence of the defendant's guilt. The state was permitted to call a clinical psychologist who testified, over defense objection, about the profile of a sexual abuser of children, describing, among other things, two basic subgroups of pedophiles. While the psychologist's testimony did not directly link the pedophile profile to the defendant, the prosecutor did so during closing argument and rebuttal argument. Among other things, the prosecutor referred to the psychologist's profile testimony about the characteristics or factors of the two types of pedophiles; referred to portions of the trial testimony showing that the defendant possessed certain of the identified characteristics or factors; and stated that what the psychologist testified about is "exactly what happened here" and that the "defendant had that combination of factors" discussed by the psychologist. In holding that this use of the pedophile profile was reversible error, this court stated:
In both the majority and minority opinions in this court's recent decision of Flanagan v. State, 586 So.2d 1085 (Fla. 1st DCA 1991) (en banc), on reh'g questions certified, 16 F.L.W. D 2693 (Fla. 1st DCA Oct. 14, 1991), this court condemned the practice of using pedophile testimony as substantive evidence of a defendant's guilt. While five members of the court would have permitted such testimony if offered for the purpose of providing juror understanding, the remainder of the court was of the view that admission of such testimony was error. However, a majority of the court agreed that admission of such testimony is subject to a harmless error analysis. While in Flanagan this court found the admission of such testimony to be harmless, it is our view that the admission of the testimony in this case cannot be considered *1221 as harmless error. In Flanagan, the profile testimony was not linked to the defendant, whereas in this case, the prosecutor argued at length that appellant met the characteristics of the profile. Thus, Dr. DeMaria's testimony was used to show that because appellant met the characteristics of the profile, he committed the crime. Unlike Flanagan, this was trial by pedophile profile, which we find to be reversible error.
Id. at 1362.
The facts of this case are not materially different from those involved in Phillips, and we similarly hold that the admission of such testimony in this case was reversible error. Dr. Hodges testified over objection, "A pedophile is an individual who has sexual desires for children." He further stated:
A pedophile generally makes themselves [sic] available to children. They put themselves in positions where they are going to have contact with children. For example, baby-sitting, coaching Little League, scout masters, teaching, ... and then the idea is to provide attention, gifts. They are very generous individuals in developing the relationship. So there's a sense of loyalty. There's a sense of trust that makes it easier to sexually victimize a child. And then also the idea of what I talked about earlier, the betrayal, if someone is nice to me and gives me things, I don't want to betray them.
The state presented testimony from other witnesses that Turtle often would have kids "hanging around his apartment"; that Turtle gave gifts, toys and money to both M.J.F., and C.M.F.; and that Turtle would take M.J.F., C.M.F., and other children to places they had never been before. During closing, the prosecutor argued:
... the defendant picks upon children who do not have perfect relationships.
You heard enough about the other children. I'm not going to go into that. That was from the defendant's witnesses about, you know, what he has done with children trying to take care of them. But he picked [C.M.F.] who does not have a father figure, and not through any fault of the child, but someone who is yearning for the love of a father, someone who is easily vulnerable to this type of crime. How does he do it? He does it by his toys and games and takes them places that they normally wouldn't be able to go. And that could be the sign of a good, outstanding citizen. But it is also consistent with the testimony you heard from Dr. Hodges, the initial testimony about the type of people who do these crimes.

(Emphasis added). The sense of this argument asked the jury to convict because the defendant fit a pedophile profile.[1] This was prejudicial error that was not adequately cured by the court's admonitions to the jury. Under the circumstances shown by the record, we cannot conclude that this error was harmless. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986); State v. Lee, supra.
We reject the state's argument that the pedophile testimony was admissible to "rehabilitate" M.J.F.'s credibility, and to rebut the defense's attempt to show that it was another individual who sexually assaulted M.J.F. The state cites no provision of any statute or rule, or any case decision that directly supports the admissibility of this testimony on these grounds. This evidence did not tend to rehabilitate M.J.F.'s credibility, and did not prove that Turtle rather than Bruner sexually assaulted M.J.F. Whether Turtle was a pedophile simply had no probative value regarding any material fact or issue in dispute. Although expert testimony may, under certain circumstances, be admissible to aid in assessing the verity of a child abuse victim's injury, it should not be admitted to vouch for the credibility of the victim's *1222 testimony. See Tingle v. State, 536 So.2d 202, 205 (Fla. 1988); Erickson v. State, 565 So.2d 328 (Fla. 4th DCA 1990).
The convictions are reversed and this cause is remanded for a new trial.
REVERSED and REMANDED.
ERVIN, J., concurs.
MINER, J., concurs in result only.
NOTES
[1] When Turtle's attorney objected to the argument and moved for a mistrial, the circuit court sustained the objection, denied the motion for mistrial, and instructed the jury not to consider the prosecutor's argument.