762 So.2d 969 (2000)
James A. SMITH, Petitioner,
v.
STATE of Florida, Respondent.
No. 4D99-4405.
District Court of Appeal of Florida, Fourth District.
May 31, 2000.
Rehearing Denied July 18, 2000.
James A. Smith, Lake City, for himself.
Robert A. Butterworth, Attorney General, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for respondent..
FARMER, J.
This post conviction claim alleging ineffective assistance of appellate counsel ensues from our affirmance of defendant's conviction. Defendant argues that counsel's *970 failure to argue that the only correct standard for harmless error is State v. DiGuilio, 491 So.2d 1129 (Fla.1986), and that the State of Florida could not by section 924.051(7) transfer to him the burden of showing that the error was harmless, violated his right to the effective assistance of counsel in his appeal. We agree and grant the writ.
Our opinion in his direct appeal from the conviction sets the stage for our analysis:
"Smith ... argues that the court abused its discretion in allowing, ... inadmissible hearsay [which] should have been excluded. While we do not believe that Smith opened the door to such hearsay during his cross examination, we find that testimony [of victim's friend] on redirect was cumulative of her testimony on cross. As such, we find that Smith has not met his burden of showing that any error prejudiced his defense. See Goodwin v. State, 721 So.2d 728 (Fla. 4th DCA 1998)." [e.s.]
Smith v. State, 721 So.2d 760, 761 (Fla. 4th DCA 1998). In explaining our finding of harmless error, we followed our prior decision in Goodwin v. State, 721 So.2d 728 (Fla. 4th DCA 1998), where we had said:
"The Legislature has the authority to enact a statute setting forth the standard for reversal. Section 924.051(7), Florida Statutes (1995), places the burden on the appellant to show that a prejudicial error has occurred. We conclude that appellant has failed to demonstrate such an error." [c.o.]
721 So.2d at 729. Obviously we applied the same analysis we had used in our prior Goodwin opinion.
Our Goodwin analysis was, however, later disapproved upon review by the supreme court. There the court held that the Legislature's power to enact harmless error statutes does not abrogate the supreme court's own exclusive and "inherent authority `to determine when an error is harmless and the analysis to be used in making the determination.'" Goodwin v. State, 751 So.2d 537, 546 (Fla.1999); see also State v. Lee, 531 So.2d 133, 136 n. 1 (Fla.1988). As regards the proper application of harmless error in criminal cases, the Goodwin court said:
"Overwhelming evidence of guilt does not negate the fact that an error that constituted a substantial part of the prosecution's case may have played a substantial part in the jury's deliberation and thus contributed to the actual verdict reached, for the jury may have reached its verdict because of the error without considering other reasons untainted by error that would have supported the same result."
751 So.2d at 542; see also Lee, 531 So.2d at 137. The court pointedly explained that "[r]eview of the record to ascertain whether the error is harmless is an essential and critical appellate function." [emphasis supplied.] 751 So.2d at 546. The court reiterated that:
"The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction."
751 So.2d at 540; (citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); see also DiGuilio, 491 So.2d at 1135. Thus, as these citations to Chapman and DiGuilio show, the supreme court in Goodwin did not create a new understanding of harmless error analysis so much as it refreshed an old one.
In this case defendant's appellate counsel did not argue that the only proper harmless error standard was Chapman-DiGuilio and that section 924.051(7) improperly shifted the burden regarding harmless error and sought to establish a different standard for nonconstitutional errors. Thus our affirmance of defendant's conviction subsists in spite of two significant errors:

*971 (1) during trial the judge improperly admitted hearsay testimony which had the effect of buttressing the testimony of the victim of the alleged sexual battery, and
(2) on appeal we improperly placed the burden on defendant to show that the error was prejudicial and thus deemed the error harmless merely because it was "cumulative"meaning that it duplicated other evidence.
From these errors, especially (2), defendant argues that appellate counsel's representation fell below the acceptable standard and substantially prejudiced him.
The requirements for a showing of ineffective assistance of counsel are now well known:
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Williams v. Taylor, ___ U.S. ___, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). As the Court recently explained in Williams:
"To establish ineffectiveness, a `defendant must show that counsel's representation fell below an objective standard of reasonableness.' To establish prejudice he `must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" [c.o.]
120 S.Ct. at 1511-12; see also Strickland, 466 U.S. at 688, 104 S.Ct. 2052.
The Florida Supreme Court's decision in Goodwin, we think, suggests inferentially that the failure of a criminal appellate counsel to argue the applicable harmless error standard is so basic as to be well below the standard of professional practice for such counsel. For, as the court said in Goodwin, "whether the error is harmless is an essential and critical appellate function." [e.s.] 751 So.2d at 546. Moreover from our own experience in reviewing convictions, criminal trials are rarely error free. Indeed it would be unreasonable to expect perfect trials in a setting in which the interests of society in vindicating its criminal laws are so important, and where the stakeslife or libertyto the accused are so high, the consequences so grave. Harmless error analysis is therefore crucial; and the failure of defense counsel to present a meaningful argument within the applicable holdings can deprive an accused of a fundamental aspect of appellate representation.
Because the state is likely to argue harmlessness for most errors in criminal trials, it is therefore indispensable to effective representation that appellate counsel have a firm understanding of harmless error analysis. Appellate counsel must be prepared to advocate the essential elements and burdens imposed, grounded as they are in constitutional protections like due process, the presumption of innocence, the right to confront witnesses, and the like. Moreover, the United States Supreme Court's holdings as represented by Chapman, as well as the Florida Supreme Court's holdings in DiGuilio and Ray, are not recent features of criminal jurisprudence. Indeed, if one were merely to count appellate court citations to Chapman and DiGuilio in our opinions, one could reasonably infer their pervasiveness and *972 preeminence in appellate representation. We thus have little difficulty in finding the failure of appellate counsel to argue the applicable harmless error standard to be below the acceptable standard of representation and therefore proceed to the second component of prejudice.
The question of prejudice is tied to a reasonable probability that:
"but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"
Strickland, 466 U.S. at 688, 104 S.Ct. 2052; Williams, 120 S.Ct. at 1512. In order to determine that probability which undermines confidence in the outcome of the direct appeal, we must necessarily engage in the kind of analysis we would have employed if counsel had actually argued Chapman-DiGuilio and that section 924.051(7) improperly invaded the supreme court's power to define the features of harmless error analysis. For that we return briefly to our opinion affirming defendant's conviction and then to the supreme court's Goodwin opinion and the authorities there discussed.
Our finding of harmlessness in the direct appeal was that the:
"testimony [of victim's friend] on redirect was cumulative of her testimony on cross. As such, we find that Smith has not met his burden of showing that any error prejudiced his defense. [emphasis supplied.]
721 So.2d at 731. The erroneous hearsay testimony, we said, merely replicated other testimony in the case. Defendant had thus not shown prejudice from the friend's hearsay testimony to his defense, apparently simply because the subject of the erroneous hearsay was represented in other admissible evidence.
But under Chapman-DiGuilio-Goodwin, any finding that erroneously admitted evidence is harmless because it cumulates other evidence is itself an incomplete analysis of the prejudice component. It fails to confront how the improper evidence might nevertheless have affected the jury. As the court emphasized in Goodwin:
"if one cannot say, with fair assurance, after pondering all that happened without stripping that erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." [emphasis supplied.]
Goodwin, 751 So.2d at 539-540 (citing Kotteakos v. United States, 328 U.S. 750, 764-765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). A finding that the defendant has failed to show a prejudicial effect on his defense also fails, as required by Chapman-DiGuilio-Goodwin, to place the burden on the state as the beneficiary to demonstrate that the error did not assist the state in its burden of proof in any significant way. Clearly if Chapman-DiGuilio had been argued in the way discussed in the supreme court's Goodwin opinion, our harmless error analysis would have been decidedly different. Whether it would have resulted in another outcome is the question.
As is often the case with sexual battery, there was in this case little or no objective evidence of the crime itself, much less that defendant did it. There is some DNA evidence but, while it does not exclude defendant, it is inconclusive. In short the conviction turns on the testimony of the victim as against that of the defendant, who did also testify. Yet, as defendant explains in his reply, the improperly admitted hearsay from the victim's friend:
"developed a picture of a caring friend... gingerly questioning the alleged victim in an effort to uncover the truth of what occurred during the boat ride. Thus, [the state's] redirect examination *973 vouched for the alleged victim's credibility. The remaining evidence was not `clearly conclusive.'"
We agree with that analysis. In a case where the credibility of the two principal antagonistic witnesses is the foundation for the conviction, hearsay evidence that improperly bolsters the credibility of one of them cannot be saidbeyond a reasonable doubtto be of no effect on the finder of fact. Such a bolstering of credibility for the state's witness considerably weakens one's confidence in the outcome and creates reasonable doubts as to the state's assertion that the error did not contribute to the verdict.
We therefore grant the writ and remand to the trial court for a new trial.
STEVENSON, J., concurs specially with opinion.
STONE, J., dissents with opinion.
STEVENSON, J., concurring specially.
I concur in Judge Farmer's majority opinion. I write only to emphasize the procedural time-line which led to our conclusion that appellate counsel's performance fell below the appropriate standard in Smith's direct appeal.
Predicated on this court's decision in Goodwin v. State, 721 So.2d 728 (Fla. 4th DCA 1998), Smith's conviction for the commission of a lewd and lascivious act on a child under 16 was affirmed. See Smith v. State, 721 So.2d 760 (Fla. 4th DCA 1998). Before mandate issued in Smith's direct appeal on December 1, 1998, the Supreme Court of Florida granted review in Goodwin on November 16, 1998. The court in Goodwin certified the following question:
In appeals which do not involve constitutional error, does the enactment of section 924.051(7), Florida Statutes, abrogate the harmless error analysis announced in DiGuilio v. State [State v. DiGuilio,] 491 So.2d 1129 (Fla.1986)?
721 So.2d at 731 (on motion for rehearing).
Even after the supreme court accepted review in Goodwin and while mandate had not yet issued in Smith's direct appeal, appellate counsel never took steps to urge the application of the DiGuilio harmless error standard to this case, never sought to have this court certify the same question that was certified in Goodwin, and did not seek review in the Supreme Court of Florida based on the court's acceptance of review in Goodwinthe cornerstone of this court's affirmance of Smith's conviction.
STONE, J., dissenting.
In my judgment, Petitioner has failed to demonstrate that an omission by his appellate counsel to assert an argument in support of applying the DiGuilio standard had a prejudicial impact on Petitioner's appeal to such a degree that we can say that it undermines confidence in the fairness and the correctness of the outcome. By our earlier opinion, we concluded that questioned testimony was cumulative and that its admission did not prejudice Petitioner's defense. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Johnson v. Wainwright, 463 So.2d 207 (Fla.1985). I do not agree that applying the DiGuilio standard would result in a conclusion in the direct appeal that admitting the cumulative testimony was not harmless error.