RAMIREZ, J.
Gilda Oliveros appeals her convictions for two counts of solicitation of first degree murder and three counts of voter fraud. We affirm the voter fraud convictions, but reverse the convictions for solicitation of first degree murder because the state injected irrelevant evidence of a million dollar liability policy.
In the Fall of 1999, Oliveros was charged with having three years earlier solicited Robert Godwin to murder her then husband, Angel Ramos. The alleged plot was to murder Ramos at the flea market where he worked security or to murder him during a fake home invasion robbery. Nothing developed beyond talk. Oliveros was also charged with soliciting *337 Rafael Reyes to murder Ramos several months after her proposition to Godwin. The new proposal allegedly involved kid-naping Ramos, taking him to a remote area of Hialeah Gardens, killing him and setting the car on fire. Again, nothing was done to implement this latter plan.
Oliveros had purchased a $45,000 life insurance policy on her husband with herself and her stepson as beneficiaries. For the murder, Godwin and Reyes would purportedly receive payment from Oliveros’ half of this policy. By April 1997, Oliveros had cancelled the policy and divorced Ramos.
At trial, the defense argued that no one would solicit murder merely to share less than $23,000 with two other people. As further evidence of motive, the State presented evidence of a million dollar liability policy held by the flea market where Ramos worked, as well as circumstantial evidence that Oliveros may have been aware of the existence of that policy. We find the introduction of this evidence was harmful error.
Much of the argument at the trial level centered on whether Ramos was an employee, which would exclude him from coverage, or an independent contractor. Even if we assume he was an independent contractor, the flea market’s policy could not possibly have been a motive for Olive-ros to kill her husband because, for Olive-ros to collect, she would have had to sue the flea market for the wrongful death of her husband, in effect alleging that the security provided by Ramos was inadequate to protect himself. The argument that Oliveros may have thought that she could collect all that money is unpersuasive because none of the State witnesses could provide direct testimony that she even knew about the policy. The probative value of this evidence was at best minimal, while its prejudicial impact was considerable. The policy was thus legally irrelevant. See Rule 90.403, Florida Rules of Evidence (“Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence”).
The burden is on the State to prove beyond a reasonable doubt that the error did not contribute to the verdict. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). The harmless error test “requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.” Id. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is harmful. Id. at 1139. “Overwhelming evidence of guilt does not negate the fact that an error that constituted a substantial part of the prosecution’s case may have ... contributed to the actual verdict reached.... ” State v. Lee, 531 So.2d 133, 137 (Fla.1988). See also Ousley v. State, 763 So.2d 1256 (Fla. 3d DCA2000).
The prosecutor mentioned the million dollar policy in both his opening and closing arguments, and, late in the State’s case, introduced the testimony of two witnesses in order to refute the defense argument that there was no monetary motive for Oliveros to kill her husband, that no one would kill for a share of the $45,000 policy. The million dollar policy was therefore a substantial part of the prosecution’s case. We are thus not satisfied beyond a reasonable doubt that this evidence did not contribute to the verdict and accordingly reverse Oliveros’ convictions for *338 soliciting the murder of her former husband.
We find no merit in Oliveros’ other arguments and affirm the convictions for voter fraud.
Affirmed in part, reversed in part.