968 So.2d 1039 (2007)
LaReginald PRESSLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 5D06-1470.
District Court of Appeal of Florida, Fifth District.
November 30, 2007.
*1040 James S. Purdy, Public Defender, and Thomas J. Lukashow, Assistant Public Defender, Daytona Beach, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Rebecca Roark Wall, Assistant Attorney General, Daytona Beach, for Appellee.

ON MOTION FOR REHEARING
PER CURIAM.
We withdraw the prior panel decision and substitute this opinion in its place.
LaReginald Pressley challenges his conviction for lewd or lascivious molestation of his thirteen-year-old neighbor. Because we conclude that the trial court erroneously admitted the hearsay testimony of the victim's mother, and because we are unable to conclude that this error was harmless, we reverse the conviction and remand for a new trial.
During Pressley's jury trial, the State presented the testimony of the victim and her mother. The victim testified that on September 18, 2003, while she was walking home from school with her friends, she saw Pressley, her neighbor, standing on the side of the road by himself. Pressley asked her if her cell phone worked and she answered that it did. She gave Pressley her cell phone number and continued walking home. When she got home, Pressley called her cell phone and asked her to come over to his house. When she got to Pressley's house, they talked briefly at the doorway. Pressley then stated that he "ha[d] been watching [her] for a long time" and pulled her into his house. She testified: "He pulled me in, closed the door, he had me against the wall. He put his tongue in my mouth, and his hands on my bottom, feeling me up." She estimated that she was in the house about fifteen minutes before she was able to get away. She went home and called her mother at work. Although the victim testified that she was crying and felt sad, she did not tell her mother what had happened until her mother came home. The victim also testified that, after she got home following the incident, Pressley called her on her cell phone again, but she did not answer. When her mother got home, the victim told her what had happened.
*1041 The victim's mother testified that Pressley lived three houses down from them. She described the relationship between her family and Pressley as "[a]ssociates, friends. He lived right down the street. Every time we saw him or somebody in my family saw him, we would speak, stop and talk. He's cut my yard." She testified that on the day of the alleged molestation, the victim called her and told her that she had something to tell her when she got home. She described the victim as sounding "a little down." When she got home at "5:30, 6:00," the victim told her what had happened. Over defense counsel's hearsay objection and in response to questioning by the prosecutor, the mother testified that the victim made the following statements:
A. She asked me what was [sic] molestation was. I gave her my definition of it, and she told me that [Pressley] had put his hands on her butt.
Q. Did she [sic] anything else about what happened?
A. She told me he grabbed her, and pulled her into the house, and he put her up against the door, and he had her caged up, and wouldn't let her out.
Q. Did she say anything about kissing?
A. She said he put his mouth on her's [sic], and tried to put his tongue in her mouth.
Pressley did not testify and did not call any witnesses. His defense strategy was to attack the victim's credibility. The State introduced Pressley's telephone records, which showed that he had called the victim's cell phone at 4:48 and 4:57 p.m. The defense argued, based on the phone records, that the victim's testimony was entirely incredible because she had testified that she spoke with Pressley three to five minutes the first time he called, the molestation took fifteen minutes, and he called her a second time after she returned home.
The jury returned a verdict finding Pressley guilty of lewd or lascivious molestation. His motion for new trial, based on the admission of the hearsay testimony, was denied. The trial court sentenced Pressley, as an habitual felony offender, to ten years in prison, followed by seven years of sex offender probation.
On appeal, Pressley argues that the trial court erred in allowing the victim's mother to testify, over his hearsay objection, as to what the victim told her about what happened. He contends that the hearsay testimony improperly bolstered the victim's credibility. The error was prejudicial, he claims, because the case hinged on the victim's credibility. Pressley also argues that, in ruling on his motion for new trial, the court erroneously ruled that the statement was admissible as an excited utterance. We agree.
Section 90.803(2), Florida Statutes (2006), defines the excited utterance exception to the hearsay rule, as follows: "A statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Pressley contends that the victim's statements to her mother did not fall within the excited utterance exception to the hearsay rule because the record establishes that the victim had time to reflect upon the events before making them. He relies on the testimony of both the victim and her mother, as well as phone records, as support. The victim testified that, after the incident, she left Pressley's house, went home and called her mother. She told her mother that she had something to tell her when she got home. Her mother testified that she arrived home between 5:30 and *1042 6:00 p.m. and the victim told her what happened. Pressley's phone records, which had been admitted by the State, establish that the alleged molestation occurred no later than 4:57 p.m. Thus, according to Pressley, the victim had sufficient time for reflective thought and, therefore, the statements were not excited utterances.
Pressley relies on Hutchinson v. State, 882 So.2d 943 (Fla.2004). In that case, the defendant was accused of murdering his girlfriend and her three children. The state called Pruitt, a friend of the girlfriend, as a witness to testify. Over a hearsay objection, Pruitt recounted a telephone conversation she had with the girlfriend on the night of the murders, wherein the girlfriend told Pruitt that she and the defendant had had a big fight. Our supreme court reversed the trial court's determination that the testimony was admissible as an excited utterance. The supreme court explained:
While an excited utterance need not be contemporaneous to the event, it must be made while the declarant is under the stress of the startling event and without time for reflection. See Rogers v. State, 660 So.2d 237, 240 (Fla. 1995). In this case, the time between the startling event (the fight between [the girlfriend] and Hutchinson) and the telephone conversation is not clearly ascertainable from this record. The most that can be said is that the fight probably occurred between 7 p.m. (the approximate time of [the girlfriend's] conversation with another friend) and 7:30 p.m. (the approximate time of [the girlfriend's] conversation with Pruitt). Without more information, we can only speculate as to whether [the girlfriend] engaged in reflective thought. However, this was a long enough time interval to permit reflective thought. "[W]here the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process." State v. Jano, 524 So.2d 660, 661 (Fla.1988) (quoting Edward W. Cleary, McCormick on Evidence, § 297, at 856 (3d ed.1984)). There is no evidence in the record to show what occurred between the fight with Hutchinson and the phone call to Pruitt. Absent some evidence that [the girlfriend] did not engage in reflective thought, the statement to Pruitt cannot be admitted as an excited utterance. . . . Because the record does not describe the fight between [the girlfriend] and Hutchinson, or provide the time the fight was over, we have no evidence upon which to base a conclusion that [the girlfriend] did not engage in reflective thought. [The girlfriend's] statements to Pruitt are not, therefore, admissible under the excited utterance exception to the hearsay rule.
Hutchinson, 882 So.2d at 951-52.
The State does not address the Hutchinson decision but, nonetheless, argues that the excited utterance exception applies to the victim's statements to her mother. It primarily argues that the victim did not have time for reflective thought because there was only 45-60 minutes between the incident and the statements. As Hutchinson explains, however, although an excited utterance need not be contemporaneous to the event, it must be made while the declarant is under the stress of the startling event and without time for reflection. The burden is on the proponent of the statement to show that the declarant did not have time to reflect. Here, once the defense raised the hearsay objection, the burden shifted to the State to show that the statement fell within the excited utterance exception. The State *1043 has failed to meet this burden. The record supports Pressley's argument that the victim had time for reflection before telling her mother what happened. Most telling is the fact that when the victim called her mother, she did not tell her mother what happened at that time; rather, the victim told her mother she needed to speak with her when she got home. Thus, the victim made a conscious decision to refrain from saying anything until some later point, indicating that she was not "under the stress of the startling event" at that time. Further, in Hutchinson, the court found that 30 minutes was a long enough time period for reflection. Here, the victim had at least 45 minutes to reflect before making the statements. We conclude, therefore, that the State failed to meet its burden to show that the exception applied.
The State offers two alternative bases for admission of the hearsay statement, neither of which was argued to the trial court. First, the State contends that the testimony was admissible as a prior consistent statement, pursuant to section 90.801(2)(b), Florida Statutes, because the defense attempted to show that the victim was motivated by her dislike of Pressley to fabricate the molestation allegation. Second, the State argues that the common law doctrine of "first complaint" applies. It defines that doctrine as allowing the admission of a statement made to the first person a declarant comes into contact with after the event.[1] We reject both of these alternative arguments because they are not supported by the record.
Lastly, we reject the State's contention that the error was harmless. Pressley's conviction was premised entirely on the credibility of the only eyewitness to the event  the victim. The disputed testimony had the effect of improperly bolstering the victim's testimony. "'If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.'" Essex v. State, 917 So.2d 953, 958 (Fla. 4th DCA 2005) (quoting State v. Lee, 531 So.2d 133, 136 (Fla.1988)). On the facts of this case, we are unable to say beyond a reasonable doubt that the error did not affect the jury's verdict.
REVERSED AND REMANDED.
GRIFFIN, SAWAYA and TORPY, JJ., concur.
NOTES
[1] The State does not offer any argument regarding whether this common law exception to the hearsay rule survived the adoption of the evidence code and it is not necessary that we address this issue in this case.